**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **ANTHONY L. GUASTELLA, individually, on behalf of the Pitney Bowes Inc. 401(k) Plan, and on behalf of all similarly situated participants and beneficiaries of the Pitney Bowes Inc. 401(k) Plan,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**PITNEY BOWES INC. and the EMPLOYEE BENEFITS COMMITTEE;**<br><br>**Defendants.** | **CASE NO:**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Anthony L. Guastella ("Plaintiff"), individually and as representative of a Class of Participants and Beneficiaries of the Pitney Bowes Inc. 401(k) Plan (the "Plan"), through counsel, alleges and asserts to the best of his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the following:

## INTRODUCTION

1. The Employee Retirement Income Security Act ("ERISA") requires 401(k) plan fiduciaries to act "solely in the interest of participants," with "the care, skill, prudence, and diligence" of a prudent person. 29 U.S.C. § 1104(a)(1). ERISA fiduciary duties are the highest known to law.

2. The Plan fiduciaries fell well short of these strict fiduciary duties by consistently retaining the T. Rowe Price Growth Stock Fund (the "TRP Growth Stock Fund") and the T. Rowe Price Mid-Cap Growth Fund (the "TRP Mid-Cap Growth Fund") for years, even though these funds have consistently proven themselves unable to beat their own chosen index benchmark, thus

violating a basic investment principle by providing no expectation of additional returns in exchange for increased risk.

3. Similarly, the TRP Growth Stock Fund and TRP Mid-Cap Growth Fund glaringly underperformed their peers under nearly all Modern Portfolio Theory ("MPT") investment metrics and, consequently, in terms of returns. If Defendants had complied with their fiduciary duties to monitor their investments, these unsuitable and underperforming investments would have been removed several years ago.

4. Defendants' failure to conduct a reasonably prudent process to investigate and monitor investment options within the Plan and remove these unsuitable and underperforming investments reduced Plan participants' retirement funds by tens of millions of dollars.

5. As a result of this imprudent activity, Plaintiff and the other Plan participants suffered between $57 million and $152 million (as to the TRP Growth Stock Fund) and between $7.9 million and $27 million (as to the TRP Mid-Cap Growth Fund) in damages over the relevant Class Period (June 30, 2020 through the date of judgment)

6. Plaintiff therefore brings this ERISA action on behalf of the Plan under 29 U.S.C. § 1132(a)(2) and Rule 23 of the Federal Rules of Civil Procedure, as a representative of a class of participants and beneficiaries of the Plan, against Defendants Pitney Bowes Inc. ("Pitney Bowes"), and the Employee Benefits Committee, for breaching their fiduciary duties in violation of ERISA with regard to the Plan.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction in this ERISA matter under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA, 29 U.S.C. § 1001 *et seq*.

8. This Court has personal jurisdiction over Defendants because they are headquartered in this district, they reside in this district, transact business in this District, have significant contacts with this District, and because ERISA provides for nationwide service of process.

9. Venue is appropriate in this District within the meaning of 29 U.S.C. § 1132(e)(2) because some or all of the violations of ERISA occurred in this District, Plaintiff was harmed in this District, and Defendants reside and may be found in this District.

## PARTIES

10. Plaintiff is a resident of the state of Connecticut and was a resident of the state of Connecticut during the entire Class Period. Plaintiff is a current participant in the Plan under 29 U.S.C. § 1002(7) and was a participant during the Class Period.

11. Plaintiff worked at Pitney Bowes during the Class Period.

12. During the Class Period, Plaintiff invested in the TRP Growth Stock Fund and the TRP Mid-Cap Growth Stock Fund.

13. Plaintiff has Article III standing to bring this action on behalf of the Plan because Plaintiff suffered actual injuries through the imprudent decisions made by Defendants, including the decision to include, and not to remove, the TRP Growth Stock Fund and the TRP Mid-Cap Growth Stock Fund from the Plan. Those injuries are fairly traceable to Defendants' unlawful conduct and breach of their fiduciary duties under ERISA, and those harms are likely to be redressed by a favorable judgment providing appropriate equitable relief to the Plaintiff and to the Class.

14. Having established Article III standing, Plaintiff may seek recovery under 29 U.S.C. § 1132(a)(2) on behalf of the Plan and for relief that sweeps beyond his own injuries.

15. Plaintiff, like all participants in the Plan, lacked knowledge of all material facts necessary to understand that Defendants breached their fiduciary duties until shortly before this

suit was filed. For instance, among other factors, Plaintiff and the other participants did not have access to comparisons of the Plan's investment performance relative to other available investment alternatives. Plaintiff further lacks actual knowledge of the specifics of the Defendants' decision-making processes with respect to the Plan, including the Defendants' processes for monitoring and removing Plan investments, because this information is solely within the possession of the Defendants prior to discovery. For purposes of this Complaint, Plaintiff has drawn plausible inferences of fiduciary imprudence regarding these processes based upon (among other things) the facts and analysis set forth herein.

16. Having never managed a large 401(k) Plan, Plaintiff, and all participants in the Plan, lacked actual knowledge of the Defendants' obligation to conduct a prudent and loyal analysis of investment options within the Plan, and to regularly review those investment options to ensure that they are performing at an acceptable level.

17. Pitney Bowes is an e-commerce shipping company headquartered in Shelton, Connecticut. It is the sponsor of the Plan. Pitney Bowes administers the Plan from Stamford, Connecticut.

18. Pitney Bowes acted through its officers and Board of Directors to perform Plan-related fiduciary functions in the course and scope of business. Pitney Bowes and its Board appointed other Plan fiduciaries on the Employee Benefits Committee (the "401(k) Committee") and accordingly had a fiduciary duty to monitor and supervise those appointees. For these reasons, Pitney Bowes and its Board are fiduciaries within the meaning of 29 U.S.C. § 1002(21)(A).

19. The Plan is administered by the 401(k) Committee. As the Plan Administrator, the 401(k) Committee is a fiduciary with day-to-day administration and operation of the Plan under 29 U.S.C. § 1002(21)(A). The 401(k) Committee has authority and responsibility for the control,

management, and administration of the Plan in accord with 29 U.S.C. § 1102(a), with all powers necessary to properly carry out such responsibilities.

20. Plaintiff is currently unaware of the identities of the individual members of Board or Committee.

21. Under 29 U.S.C. § 1109, plan fiduciaries are "personally liable to make good to such plan any losses to the plan resulting from each such breach [of fiduciary duty]."

## FACTUAL ALLEGATIONS

22. The Plan Fiduciaries added TRP Growth Stock Fund and the TRP Mid-Cap Growth Stock Fund to the Plan's investment lineup in or around 2009.

23. As of December 31, 2024, Plan participants had invested over $139M of their retirement savings in TRP Growth Stock Fund, and approximately $59M in the TRP Mid-Cap Growth Stock Fund.

24. As described in detail below, the Defendants' failure to remove these unsuitable and underperforming investments from the Plan has caused the Plan Participants to suffer losses between around $57 million and $152 million (as to the TRP Growth Stock Fund) and between $7.9 million and $27 million (as to the TRP Mid-Cap Growth Fund), as set forth in the tables below.[1]

**Approximate Performance Losses and Metrics January 1, 2020 to December 31, 2025**

| Investment Name | Total # of Metrics Analyzed | # of Metrics Underperformed | Percentage of Metrics Underperformed | Performance Losses ($) vs. Comparators |
|---|---|---|---|---|
| Alger Focus Equity Z | 72 | 71 | 99% | -$152,938,718 |
| Fidelity Blue Chip Growth K | 72 | 72 | 100% | -$121,855,649 |
| JPMorgan Growth Advantage R6 | 72 | 66 | 92% | -$79,019,639 |
| Putnam Large Cap Growth R6 | 72 | 70 | 97% | -$57,703,551 |
| Vanguard Russell 1000 Growth Index I | 36 | 36 | 100% | -$76,833,484 |
| **T. Rowe Price Growth Stock Aggregate Summary** | **324** | **315** | **97%** | |

[1] Underlying data and methodologies used in this Complaint are set forth in the attached Appendices A and B.

**Approximate Performance Losses and Metrics January 1, 2022 to December 31, 2025**

| Investment Name | Total # of Metrics Analyzed | # of Metrics Underperformed | Percentage of Metrics Underperformed | Performance Losses ($) vs. Comparators |
|---|---|---|---|---|
| Federated Hermes MDT Mid Cap Growth R6 | 48 | 48 | 100% | -$27,797,628 |
| Fidelity Growth Strategies K | 48 | 48 | 100% | -$16,827,946 |
| American Beacon Stephens Mid-Cap Gr R6 | 48 | 38 | 79% | -$7,905,326 |
| **T. Rowe Price Mid-Cap Growth Aggregate Summary** | **184** | **168** | **91%** | |

**A. Defendants' Fiduciary Duties Under ERISA**

25. ERISA imposes strict fiduciary duties upon the Defendants as fiduciaries of the Plan, including the duty of prudence. These duties apply to all fiduciary acts, including the Defendants' selection and retention of investment options for the Plan.

26. ERISA's duty of prudence requires fiduciaries to discharge their responsibilities "with the care, skill, prudence, and diligence" that a prudent person "acting in a like capacity and familiar with such matters would use." 29 U.S.C. §1104(a)(1)(B).

27. As part of their fiduciary duty, the Defendants "ha[ve] a continuing duty to monitor [Plan] investments and remove imprudent ones" that exists "separate and apart from the [fiduciary's] duty to exercise prudence in selecting investments." *Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015); *Hughes v. Northwestern Univ.*, 63 F. 4th 615, 626-27 (7th Cir. 2023)("[T]he duty of prudence requires a plan fiduciary to systematically review its funds both at the initial inclusion of a particular fund in the plan and at regular intervals to determine whether each is a prudent investment."), *accord, Morrissey v. Curran,* 567 F.2d 546, 549, fn. 9 (2d Cir. 1977) (noting that a "trustee's obligation to dispose of improper investments within a reasonable time is well established at common law" and applying this rule in the ERISA context).

28. "A plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones." *Tibble*, at 530. If an investment is imprudent, Defendants "must dispose of it within a reasonable time." *Id.* (citation omitted).

29. ERISA also imposes explicit co-fiduciary liabilities on plan fiduciaries. 29 U.S.C. § 1105(a) provides a cause of action against a fiduciary for knowingly participating in a breach by another fiduciary and knowingly failing to cure any breach of duty.

30. Under 29 U.S.C. § 1132(a)(2), a plan participant is authorized to bring a civil action to enforce a breaching fiduciary's liability to the plan under 29 U.S.C. § 1109.

**B. Overview of Commonly Accepted Investment Theories**

31. MPT stands for the proposition that prudent investors create portfolios to maximize the expected return generated by the portfolio for a given level of risk or minimize the level of risk for a given expected return.

32. As the Government Accountability Office stated in its June 2014 Report to the Ranking Member, Committee on Education and the Workforce, House of Representatives, MPT "is a body of academic and empirical work that focuses on choosing a portfolio, not just its individual parts. Central components include: (1) the concept of diversification—the notion that with a well-chosen group of assets participants may be able to limit their losses and reduce fluctuations of investment returns without sacrificing too much potential gain, and (2) the concept of rebalancing—bringing a participant's portfolio back to an appropriate asset allocation mix—because over time some investments may become misaligned with the participant's investment goals. Rebalancing helps ensure that participant portfolios do not overemphasize one or more asset categories by returning the portfolio to a comfortable level of risk." GAO-14-310, p. 16, fn 31.

33. In other words, **it is a basic principle of MPT that the risks associated with an investment must be justified by its potential expected returns in order for that investment to**

**be rational.** This principle applies even before considering the purpose of the investment or the needs of an investor.

34. MPT is used to provide quantitative metrics to evaluate the performance of investment managers and to provide a rational analysis to determine whether certain investment managers are more likely to achieve a higher expected rate of return for a given amount of risk than others, i.e., outperform other investment managers, or outperform an applicable index.

35. As noted in the Appendix to the March 2024 United States Government Accountability Office Report to Congressional Requesters, some of the most important predictive risk-adjusted MPT metrics that are used to determine the prudence of an investment option include the following:[2]

- Alpha: "A measure of the difference between a portfolio's actual returns and its expected performance, given its level of risk as measured by beta. A positive Alpha indicates the portfolio has performed better than its beta would predict. In contrast, a negative Alpha indicates the portfolio has underperformed, given the expectation established by beta."
- Sharpe Ratio: "A risk-adjusted returns measure developed by William Sharpe. It is calculated over each [time] period by dividing a fund's annualized excess returns by the standard deviation of a fund's annualized excess returns to determine reward per unit of risk. The Sharpe Ratio can be used to compare two funds directly on how much risk each had to bear to earn excess return over the risk-free rate."

[2] *See*, United States Government Accountability Office Report to Congressional Requesters, "401(k) Retirement Plans" March 2024, Accessible Version, page 70-71 of the Report (76-77 of the pdf).

- Sortino Ratio: "Similar to the Sharpe ratio, the Sortino Ratio (developed by Frank Sortino) uses only the downside risk portion of the standard deviation in the denominator."

36. Some additional MPT metrics used to evaluate the performance of investment managers, and the prudence of an investment option include, but are not limited to, the following:

- Information ratio (IR): a metric that helps the investor evaluate whether the manager of the investment is beating a specific benchmark. An IR above 1.0 is evidence of excellent performance with consistent outperformance of the specific benchmark; an IR between 0.5 and 0.99 is evidence of reasonable manager skill; an IR of below 0.5 is evidence of weak performance as compared to the specific benchmark; and a negative value IR is evidence of consistent underperformance relative to the benchmark.
- Batting Average ("BA"): is a measure of a manager's ability to consistently beat the market. It is calculated by dividing the number of months in which the manager beat or matched the fund's primary benchmark index by the total number of months in the period. For example, a manager who meets or outperforms the market every month in a given period would have a batting average of 1.000. A manager who beats the market half of the time would have a batting average of .500.

37. Ultimately, maximizing risk-adjusted performance is the primary and most important criteria from an MPT selection and retention perspective, while the actual performance, returns, of an investment is the most important criteria to the plan participant because returns dictate how much money the participant has available for retirement.

38. Accordingly, risk-adjusted performance and returns should always be considered by a fiduciary when evaluating an investment option.

39. When evaluating the risk-adjusted performance and quality of investment managers, the minimum standard of care for prudent plan fiduciaries requires the incorporation of standard metrics from MPT.

40. The Capital Asset Pricing Model[3] ("CAPM") is an investment theory that builds upon the general framework of MPT and is commonly used and accepted by investment experts.

41. The CAPM provides the following mathematical formula for the principle that the risks associated with an investment must be justified by its potential returns in order for that investment to be rational:

$ERi = Rf + \beta i(Erm - Rf)$, where:

$ERi$ = the expected return of the investment

$Erm$ = the expected return of the market

$Rf$ = the risk-free rate

$\beta i$ = the beta of the investment

$(Erm - Rf)$ = the market risk premium

42. Applied here, the beta—$\beta i$—is the risk associated with an actively managed mutual fund or collective trust, which can be justified only if the expected return—*Eri*—is, at the very least, above that of its benchmark, *Rf*.[4]

---

[3] *See, e.g.*, https://corporatefinanceinstitute.com/resources/valuation/what-is-capm-formula/ (last viewed 5.22.26).

[4] In this instance, the index benchmark takes place of the "risk-free" rate, as the investment option is measured against the performance of that investment category, rather than the typical U.S. Treasury Bonds or equivalent government security in a general CAPM calculation. The APT, another investment analysis framework, likewise dictates the same result.

43. Accordingly, any suggestion that a comparison of actively managed funds to passively managed investments (as a proxy for the specific market index that the actively managed investment attempts to beat) is somehow inappropriate or an "apples to oranges" comparison ignores the fundamental purpose and design of active mutual funds and is inconsistent with basic investment theory and the prevailing frameworks employed by prudent fiduciaries and advisors to retirement plans.

44. Prudent fiduciaries should—and *must*—compare actively managed funds to passively managed funds or similar indices in order to determine whether a plan is getting the additional return to justify the increased expense and risk of the active investment. This, in addition to other metrics, is exactly what every minimally competent investment professional does to evaluate an actively managed investment and arguments or suggestions to the contrary fall far outside mainstream thought in terms of investment management, basic economics, and minimum standards of fiduciary care and prudence.

45. Indeed, in promulgating its Final Rule to Improve Transparency of Fees and Expenses to Workers in 401(k)-Type Retirement Plans in February, 2012, the DOL specifically required that plan sponsors identify benchmarks in the form of an appropriate broad-based securities market index for each investment offered in the plan, thus specifically recognizing that actively managed investments must be evaluated against indexes, for which passively managed index funds serve as an investable proxy. Performing such a comparative analysis is not merely intended to determine whether a plan would be better served by a passively managed investment, but rather whether an actively managed fund is providing value sufficient to justify its retention.

46. This is not to suggest that active management is inappropriate for use in a retirement plan lineup. However, it confirms that plan fiduciaries as a preliminary matter must carefully analyze whether an actively managed fund provides value and, if they deem a fund does not provide

increased value, they must promptly replace it with another fund that has demonstrated such capabilities or simply replace it with a fund tracking the index the fund is losing to.

47. An objective application of MPT metrics employed solely in the interest of plan participants is the best investment selection methodology currently available and is the approach that is commonly understood by prudent investment experts to be consistent with ERISA's fiduciary duty to provide retirement benefits to defined contribution plan participants (see more detailed discussion below).

**C. Large-Cap Growth Funds**

48. Fiduciary duties and basic investment concepts apply to Large-Cap Growth funds as described.

49. Large-cap stocks are typically considered to be the top 70% of US equity market capitalization.[5] Large-Growth stocks are typically projected to grow faster than other large-cap stocks.

50. Large-Growth funds create portfolios primarily composed of large-cap growth stocks.

51. The typical aim of large-cap growth funds is to provide investors with long-term growth of capital through investments in primarily large capitalization stocks.

52. The principal categories of risk for growth stock funds include market risk, issuer risk, and the risk of investing in growth-oriented stocks.

53. Market risk is the chance that stock prices overall will decline. Stock markets tend to move in cycles, with periods of rising prices and periods of falling prices, so each fund is subject to the risk that the market as a whole will fall.

[5] See, e.g., Morningstar's Investing Terms and Definitions, https://www.morningstar.com/investing-terms/large-growth.

54. Issuer risk is the chance that prices of, and the income generated by, individual securities of companies held by the fund (e.g., UnitedHealth Group) may decline in response to various factors directly related to the issuers of such securities, including reduced demand for an issuer's goods or services, poor management performance, major litigation, investigations, or other controversies related to the issuer.

55. Investing in growth-oriented stocks also carries risk. In general, such stocks (e.g., Tesla) may experience larger price swings and greater potential for loss than other types of stocks, such as those that are considered value-oriented or those that historically have paid continuous dividends (e.g., 3M Company).

**D. T. Rowe Price Growth Stock Fund**

56. The self-defined primary investment objective of TRP Growth Stock Fund is to "seek long-term growth of capital . . . by investing primarily in common stocks of well-established growth companies."[6]

57. The TRP Growth Stock Fund is an actively managed fund. In other words, it relies on the professional judgment of a portfolio management team to make decisions about the specific investments within the fund.

58. According to TRP, the TRP Growth Stock Fund typically invests at least 80% of its assets in stocks with growth characteristics. Specifically, "the fund generally seeks investments in stocks of large-cap companies with one or more of the following characteristics: strong cash flow and an above-average rate of earnings growth; the ability to sustain earnings momentum dur-

[6] See, e.g., https://www.troweprice.com/financial-intermediary/us/en/investments/mutual-funds/us-products/growth-stock-fund.html (Fact Sheet, last visited May 12, 2026).

ing economic downturns; and occupation of a lucrative niche in the economy and the ability to expand even during time of slow economic growth."[7]

59. The TRP Growth Stock Fund is considered by Morningstar[8] to be in the "Large Growth" Category and Morningstar also considers the TRP Growth Stock Fund's Investment Style to be "Large Growth."[9]

60. As of December 31, 2025, TRP compared the performance of the TRP Growth Stock Fund to the performance of both the Russell 1000 Growth Index[10] and the Russell 3000 Index and in its Fact Sheet for the Growth Stock Trust (Class D) compares the performance of the TRP Growth Stock Fund to the Russell 1000 Growth Index.

61. Accordingly, a potential reward of investing in the TRP Growth Stock Fund is that it will generate positive investment returns that outperform the Russell 1000 Growth Index.

**TRP GROWTH STOCK FUND SYSTEMICALLY AND SUBSTANTIALLY UNDERPERFORMED ITS OWN BENCHMARK DURING THE CLASS PERIOD**

62. The methodologies employed by careful and prudent fiduciaries are designed to utilize MPT and CAPM to select a diversified menu of investment options that can be used to create a risk/reward profile that can meet the needs of any hypothetical plan participant. It may be rational and prudent to include riskier investments, but only if that risk carries with it a potential for a higher reward, i.e., an outsized return exceeding the return of a comparable risk-free (or lower-risk) option.

---

[7] *Id.*
[8] As noted by the United States Government Accountability Office, "Morningstar is a financial services firm that provides data on mutual funds, collective investment trusts, and other investments." GAO Report to Congressional Requesters, GAO-24-105364, p.2, fn2 (Accessible Version).
[9] See, https://www.morningstar.com/funds/xnas/prgfx/quote
[10] The Russell 1000 Growth Index is independently maintained by FTSE Russell 1000, a wholly-owned subsidiary of the London Stock Exchange Group. FTSE Russell 1000 is and has been a leading global provider of benchmarking, analytics, and data solutions for investors for over 20 years. The Russell 1000 Index measures the performance of the 1000 largest U.S. companies in the U.S. stock market. In contrast, the Russell 1000 *Growth Index* measures the performance of a subset of roughly half of the companies comprising the Russell 1000 Index that exhibit relatively more growth characteristics than the other half.

63. Index comparisons, as described above, are also particularly important in the efficient U.S. large cap space. Prudent fiduciaries are concerned with actively managed funds' ability to add value in excess of the benchmark, particularly with the domestic large cap strategies.

64. To that end, to measure the value added or subtracted by a portfolio manager, prudent fiduciaries and investment professionals scrutinize a fund's alpha, defined by Morningstar as a measure of the difference between a portfolio's actual returns and its expected performance, given its level of risk as measured by beta. This risk is the risk of the relevant market index. A positive alpha indicates that the portfolio has performed better than its beta would predict; a negative alpha indicates the fund has underperformed expectations based on the risk assumed. Said more simply, alpha represents the return on an investment that is not attributable to the movement of the market.

65. As described below, under MPT and CAPM incorporated into the standard of care and circumstances prevailing prior to and throughout the Class Period, the Vanguard Russell 1000 Growth Index Fund represents an investable benchmark that is required to be compared with actively managed large cap growth investment options to evaluate whether it is rational to select or retain a particular actively managed large cap growth investment option.

66. These facts make the Russell 1000 Growth Index a meaningful comparator in the context of evaluating the prudence of TRP Growth Stock Fund under the circumstances prevailing prior to and throughout the Class Period.

67. In fact, T. Rowe Price's own published fund fact sheet for the TRP Growth Stock Fund lists the Russell 1000 Growth Index as its appropriate benchmark.

68. These facts also make the Russell 1000 Growth Index the most appropriate index to use in the context of the calculation and evaluation of the investment performance metrics to

determine whether any particular investment option, such as the TRP Growth Stock Fund, is prudent under the circumstances prevailing prior to and throughout the Class Period.

69. The published fund fact sheets for the TRP Growth Stock Fund from Q1 2016 to Q4 2025 show that it underperformed 29 out of 40 quarters under 3-year returns against its index benchmark; 28 out of 40 quarters under 5-year returns against its index benchmark; 35 out of 40 quarters under 3-year Alpha Ratio; and 32 out of 40 quarters under 5-year Alpha Ratio. This would have tipped off any prudent fiduciary that this investment is not justifying its active management risk and thus would have removed it in favor of a peer fund that did not violate this basic investment concept or simply retained the benchmark instead.

70. Even more concerning, as illustrated in the chart below, starting in Q3 of 2019, the TRP Growth Stock Fund outperformed its benchmark only four times: in 5- year returns and Alpha Ratio, for Q1 and Q2 2021 *only*. Thus, starting Q3 of 2019 TRP Growth Stock Fund underperformed *26 out of 26 consecutive quarters* under 3-year returns against its index benchmark; *24 out of 26* quarters under 5-year returns against its index benchmark; *26 out of 26 quarters* under 3-year Alpha Ratio; and *24 out of 26 quarters* under 5-year Alpha Ratio. A prudent fiduciary reviewing TRP Growth Stock Fund's performance against its benchmark would not have sat idly by as it continued to fail to justify its additional risk against its index benchmark.

| T. Rowe Price Growth Stock Tr-B | | | | |
|---|---|---|---|---|
| | Return vs Benchmark | | Alpha | |
| | 3-Year | 5-Year | 3-Year | 5-Year |
| Q3 2019 | (0.35%) | (0.16%) | (0.25%) | (0.39%) |
| Q4 2019 | (0.19%) | (0.18%) | (0.35%) | (0.43%) |
| Q1 2020 | (1.16%) | (0.77%) | (1.18%) | (0.95%) |
| Q2 2020 | (2.28%) | (1.01%) | (2.15%) | (1.26%) |
| Q3 2020 | (2.59%) | (1.44%) | (2.22%) | (1.52%) |
| Q4 2020 | (1.94%) | (1.73%) | (1.58%) | (1.69%) |
| Q1 2021 | (2.38%) | 0.06% | (1.71%) | 0.15% |
| Q2 2021 | (2.22%) | 0.52% | (1.68%) | 0.53% |
| Q3 2021 | (1.32%) | (0.72%) | (1.01%) | (0.42%) |
| Q4 2021 | (5.25%) | (2.14%) | (3.85%) | (1.38%) |
| Q1 2022 | (7.26%) | (4.03%) | (6.09%) | (3.37%) |
| Q2 2022 | (8.37%) | (5.67%) | (7.97%) | (5.29%) |
| Q3 2022 | (7.26%) | (5.43%) | (6.92%) | (5.11%) |
| Q4 2022 | (8.31%) | (5.90%) | (8.01%) | (5.55%) |
| Q1 2023 | (8.26%) | (6.16%) | (7.72%) | (5.76%) |
| Q2 2023 | (7.52%) | (6.01%) | (7.11%) | (5.60%) |
| Q3 2023 | (6.40%) | (4.76%) | (6.14%) | (4.48%) |
| Q4 2023 | (6.96%) | (5.87%) | (6.63%) | (5.45%) |
| Q1 2024 | (7.35%) | (5.62%) | (6.96%) | (5.16%) |
| Q2 2024 | (7.73%) | (5.65%) | (7.31%) | (5.22%) |
| Q3 2024 | (7.55%) | (5.37%) | (7.14%) | (4.94%) |
| Q4 2024 | (5.64%) | (5.54%) | (5.41%) | (5.09%) |
| Q1 2025 | (3.26%) | (5.36%) | (3.11%) | (4.87%) |
| Q2 2025 | (1.79%) | (5.52%) | (1.62%) | (5.02%) |
| Q3 2025 | (2.72%) | (5.65%) | (2.08%) | (5.20%) |
| Q4 2025 | (0.96%) | (5.57%) | (0.64%) | (5.17%) |

71. Thus, even before the Class Period began, the TRP Growth Stock Fund had proven that it could not beat (or even match) its benchmark at even close to an acceptable rate—violating the basic investment principles that additional active management risk must be accompanied by an expectation of additional returns. Under the standards of a prudent fiduciary, it should have been removed from the Plan.

72. In fact, starting Q3 of 2021 TRP Growth Stock Fund *never* outperformed its benchmark again under 3- and 5-year returns and Alpha Ratio. Defendants' continuing failure to remove this fund therefore demonstrates a profound breakdown of the investment monitoring process.

73. In effect, the TRP Growth Stock Fund consistently offered a *lower* return for a *higher* degree of risk—the precise opposite of what any prudent and careful fiduciary would seek.

74. Based on the information available to the Plan Fiduciaries with respect to TRP Growth Stock Fund performance against its index benchmark, a plan fiduciary following the minimum standard of care for prudence, when evaluating whether to continue to retain the TRP Growth Stock Fund would have determined that it violated bedrock investment principles and removed it at least by the middle of 2020, and/or all following consecutive quarters.

75. Any prudent fiduciary exercising prudent monitoring of its menu of investment options would have noticed that the TRP Growth Stock Fund's consistent underperformance was causing catastrophic damages to the Plan participants.

76. Fiduciaries following a prudent process in monitoring this investment would have recognized this underperformance and not have ignored TRP Growth Stock Fund's shortcomings against its applicable index benchmark.

77. TRP Growth Stock Fund's violation of a bedrock investment principle—that higher risks require a higher return—would have been cause to act for any prudent fiduciary.

78. Had the Fiduciaries engaged in appropriate monitoring, they would have placed this fund on watch well before the Class Period began and removed it by, at least, Q2 of 2020.

79. Fiduciaries applying a prudent process could not sit idly by as an investment continuously failed to beat its applicable index benchmark. The TRP Growth Stock Fund was and is simply not an appropriate option for the Plan.

80. Defendants' failure to notice or act upon the TRP Growth Stock Fund's underperformance of its own index benchmark alone is cause enough to infer imprudent process.

## Peer Comparison, Selection, Monitoring, and Replacement Process used by Prudent Fiduciaries

81. Defendants similarly failed to notice, or act on, the TRP Growth Stock Fund's consistent underperformance relative to its peers.

82. The standard of care for plan fiduciaries selecting and monitoring investment options under the circumstances prevailing prior to and throughout the Class Period requires an evaluation of several commonly accepted MPT metrics which serve as indicators/predictors as to whether it is reasonable to assume that any particular investment is likely to achieve its goals prospectively and is a reasonable option compared to alternatives that appear to be more likely to achieve their goals.

83. Prudent fiduciaries scrutinize investment managers to determine whether an active manager has demonstrated an ability to succeed in their chosen sector of the market. To perform this analysis, and to distinguish between a skilled manager and a lucky one, fiduciaries judge fund performance against both an appropriate index benchmark and a universe of similar funds over periods most closely approximating a market cycle—typically three- and five-year intervals. These time-horizons are emphasized by virtually all prudent fiduciaries as the most important to gauge an investment manager's ability to execute their strategy. Accordingly, these two specific time horizons (three- and five-year trailing performance) are typically weighted more heavily than any other timeframes in connection with review of 401(k) investments.

84. Prudent fiduciaries utilize a careful, reasoned investment selection and monitoring process that considers a wide array of metrics commonly accepted and incorporated in MPT that allow the fiduciary to properly assess the prudence of any potential investment. Such an investment

selection and monitoring process considers all the appropriate metrics and circumstances present at the time of the selection/retention/removal decision in order to evaluate whether the investment should be selected, retained, or removed.

85. This process, when properly performed, involves a regular review of MPT investment performance metrics against a relevant index and peer group for the most recent calendar quarter end over the previous three- and five-year periods in order to discern any pattern of underperformance. Through this lens, if a fund exhibits a persistent inability to exceed the returns of its market index and/or rank above a threshold percentile (the top 50% at a minimum) among its peers across a broad range of MPT metrics, prudent fiduciaries perform a detailed review of the fund and investigate potential replacements.

86. While each different fiduciary may use a slightly different set of MPT metrics weighted slightly differently, there is a set of critical metrics that are relatively more predictive of the results. In other words, regardless of the specific combination of metrics used, if an investment option rates as inferior or imprudent when evaluated by the metrics set forth below, they frequently also rate as inferior or imprudent under any reasonably prudent combination of metrics and weightings.

87. Accordingly, a prudent plan fiduciary, when determining whether to retain a "Large Growth" Investment Option, would evaluate and compare the performance and commonly accepted investment performance metrics to meaningful benchmarks including peer alternatives/substitutes, such as the ones identified below, and the Russell 1000 Growth Index.

**TRP Growth Stock Fund has Similar Aims, Risks, and Rewards as the Comparator Funds**

88. Like other large-cap growth funds, the TRP Growth Stock Fund's primary risks are related to (1) market risk, (2) issuer risk, and (3) the risks of investing in growth-oriented stocks.

89. The TRP Growth Stock Fund is not the only large-cap growth fund on the market with a substantially similar mix of aims, risks, and potential rewards as described above. As shown below, numerous substantially similar funds / substitutes have existed prior to and throughout the Class Period. The TRP Growth Stock Fund dramatically and consistently underperformed its benchmark and several meaningful substitutes across a wide range of commonly and prudently utilized metrics.

90. Accordingly, all the investment options described below would be included by a prudent fiduciary in the peer consideration set for both benchmarking the TRP Growth Stock Fund as well as serving as potential replacements for the TRP Growth Stock Fund in the event it needed to be replaced.

91. Moreover, prudent fiduciaries would evaluate the performance of TRP Growth Stock Fund in comparison to the alternative comparable substitute investment options and benchmarks described below.

92. As a result, the following investment strategies/investment managers[11] are and have been both meaningful benchmarks as well as potential replacements for the TRP Growth Stock Fund prior to and throughout the Class Period. Similarly, the index listed below is and has been a meaningful benchmark to evaluate the performance of the investment managers of the TRP Growth Stock Fund prior to and throughout the Class Period:

a. Alger Focus Equity Strategy

b. Fidelity Blue Chip Growth Strategy

c. JP Morgan Growth Advantage Strategy

[11] Following the process utilized by prudent fiduciaries prior to and throughout the Class Period, any investment performance metric comparisons and other comparative metrics contained in this Complaint utilize the share class and/or trust that is the most appropriate for comparison in terms of fee rates, investment minimums, and track record (meaning the length of time for which the investment option has available data).

d. Putnam Large Cap Growth Strategy

e. Vanguard Russell 1000 Growth Index

f. Russell 1000 Growth Index

93. Each of these comparable benchmarks and investable substitutes set forth above and below shares the same aims, risks, potential rewards, goals, and objectives and are categorized identically by Morningstar under the following portfolio criteria: 1) Morningstar Category Broad Group ("Equity"); 2) Morningstar Category Group ("Equity"); 3) Morningstar Category ("US Fund Large Growth"); 4) Morningstar Global Category ("US Equity Large Cap Growth"); 5) US Category Group ("U.S. Equity") 6) Morningstar Equity Style Box (Long) ("Large Growth"); 7) Morningstar Category Index ("Russell 1000 Growth TR USD"); 8) Morningstar Index ("Morningstar US LM Brd Growth TR USD"); 9) S&P Dow Jones Benchmark ("DJ US Total Stock Market Growth TR USD"); and 10) FTSE/Russell Benchmark ("Russell 1000 Growth TR USD").

94. Additionally, because the investment strategies and aims of each of the comparable benchmarks and investable substitutes set forth below are designed to focus on large growth stocks, they are each required to share very similar asset allocations and, in fact, have had very similar asset allocations prior to and throughout the Class Period.

95. For example, as of April 30, 2026, each of these funds held more than 73% of their assets in companies that accounted for the top 70% (large stock) of the capitalization of United States stocks and the TRP Growth Stock Fund's allocation towards large stocks is the median among these comparable benchmarks and investable substitutes. Furthermore, the TRP Growth Stock Fund and all comparator peers invest the vast majority of their assets in the Giant and Large Cap category without diversifying into bonds or fixed income investments. As such their risks, aims, goals, and strategies are aligned and centered on Giant and Large Cap opportunities.

96. Prudent fiduciaries would have therefore included each of the comparable alternative substitute investment options when monitoring the TRP Growth Stock Fund and considered each of the investable substitutes identified above as potential replacements.

### 1. Alger Focus Equity Fund Z

97. The Alger Focus Equity Fund Z ("Alger Growth Fund") has similar aims, risks, and potential rewards to those of the TRP Growth Stock Fund.

98. Like the TRP Growth Stock Fund, the Alger Growth Fund is an actively managed large-cap growth fund.

99. The Alger Growth Fund's aim is to seek long-term growth of capital. Like the TRP Growth Stock Fund, the Alger Growth Fund pursues its aim by investing primarily in large-cap stocks with growth characteristics.

100. Morningstar has identified the Russell 1000 Growth Index as the most appropriate category benchmark index for both the Alger Growth Fund and the TRP Growth Stock Fund.

101. The Alger Growth Fund's potential reward is that it will generate positive investment returns that outperform the Russell 1000 Growth Index.

102. Like the TRP Growth Stock Fund, the principal risks of the Alger Growth Fund are related to (1) market risk, (2) issuer risk, and (3) the risks of investing in growth-oriented stocks.

103. The aims, risks, and potential rewards of the Alger Growth Fund are meaningfully comparable to those of the TRP Growth Stock Fund given the similarities in the two funds' investment strategies and the types and sizes of the stocks the two funds own.

104. Under the circumstances prevailing prior to and throughout the Class Period, a prudent fiduciary and/or Investment Consultant would consider the Alger Growth Fund as a substitute for the TRP Growth Stock Fund in the event the TRP Growth Stock Fund needed to be replaced.

105. These facts make the Alger Growth Fund a meaningful comparator to the TRP Growth Stock Fund.

**2. Fidelity Blue Chip Growth Commingled Pool Class Z**

106. The Fidelity Blue Chip Growth Commingled Pool Class Z ("Fidelity Growth Fund") has similar aims, risks, and potential rewards to those of the TRP Growth Stock Fund.

107. Like the TRP Growth Stock Fund, the Fidelity Growth Fund is an actively managed large-cap growth fund.

108. The Fidelity Growth Fund's aim is to seek long-term growth of capital. Like the TRP Growth Stock Fund, the Fidelity Growth Fund pursues its aim by investing primarily in large-cap stocks with growth characteristics.

109. Morningstar has identified the Russell 1000 Growth Index as the most appropriate category benchmark index for both the Fidelity Growth Fund and the TRP Growth Stock Fund.

110. The Fidelity Growth Fund's potential reward is that it will generate positive investment returns that outperform the Russell 1000 Growth Index.

111. Like the TRP Growth Stock Fund, the principal risks of the Fidelity Growth Fund are related to (1) market risk, (2) issuer risk, and (3) the risks of investing in growth-oriented stocks.

112. The aims, risks, and potential rewards of the Fidelity Growth Fund are meaningfully comparable to those of the TRP Growth Stock Fund given the similarities in the two funds' investment strategies and the types and sizes of the stocks the two funds own.

113. Under the circumstances prevailing prior to and throughout the Class Period, a prudent fiduciary and/or Investment Consultant would consider the Fidelity Growth Fund as a substitute for the TRP Growth Stock Fund in the event the TRP Growth Stock Fund needed to be replaced.

114. These facts make the Fidelity Growth Fund a meaningful comparator to the TRP Growth Stock Fund.

**3. J.P. Morgan Chase Bank Growth Advantage Investment Class (CIT)**

115. The J.P. Morgan Chase Bank Growth Advantage Investment Class (CIT) ("JPM Advantage Growth Fund") has similar aims, risks, and potential rewards to those of the TRP Growth Stock Fund.

116. Like the TRP Growth Stock Fund, the JPM Advantage Growth Fund is an actively managed large-cap growth fund.

117. The JPM Advantage Growth Fund's aim is to seek long-term growth of capital. Like the TRP Growth Stock Fund, the JPM Advantage Growth Fund pursues its aim by investing primarily in large-cap stocks with growth characteristics.

118. Morningstar has identified the Russell 1000 Growth Index as the most appropriate category benchmark index for both the JPM Advantage Growth Fund and the TRP Growth Stock Fund.

119. The JPM Advantage Growth Fund's potential reward is that it will generate positive investment returns that outperform the Russell 1000 Growth Index.

120. Like the TRP Growth Stock Fund, the principal risks of the JPM Advantage Growth Fund are related to (1) market risk, (2) issuer risk, and (3) the risks of investing in growth-oriented stocks.

121. The aims, risks, and potential rewards of the JPM Advantage Growth Fund are meaningfully comparable to those of the TRP Growth Stock Fund given the similarities in the two funds' investment strategies and the types and sizes of the stocks the two funds own.

122. Under the circumstances prevailing prior to and throughout the Class Period, a prudent fiduciary and/or Investment Consultant would consider the JPM Advantage Growth Fund as

a substitute for the TRP Growth Stock Fund in the event the TRP Growth Stock Fund needed to be replaced.

123. These facts make the JPM Advantage Growth Fund a meaningful comparator to the TRP Growth Stock Fund.

**4. Putnam Large Cap Growth Fund R6**

124. The Putnam Large Cap Growth Fund R6 ("Putnam Growth Fund") has similar aims, risks, and potential rewards to those of the TRP Growth Stock Fund.

125. Like the TRP Growth Stock Fund, the Putnam Growth Fund is an actively managed large-cap growth fund.

126. The Putnam Growth Fund's aim is to seek long-term growth of capital. Like the TRP Growth Stock Fund, the Putnam Growth Fund pursues its aim by investing primarily in large-cap stocks with growth characteristics.

127. Morningstar has identified the Russell 1000 Growth Index as the most appropriate category benchmark index for both the Putnam Growth Fund and the TRP Growth Stock Fund.

128. The Putnam Growth Fund's potential reward is that it will generate positive investment returns that outperform the Russell 1000 Growth Index.

129. Like the TRP Growth Stock Fund, the principal risks of the Putnam Growth Fund are related to (1) market risk, (2) issuer risk, and (3) the risks of investing in growth-oriented stocks.

130. The aims, risks, and potential rewards of the Putnam Growth Fund are meaningfully comparable to those of the TRP Growth Stock Fund given the similarities in the two funds' investment strategies and the types and sizes of the stocks the two funds own.

131. Under the circumstances prevailing prior to and throughout the Class Period, a prudent fiduciary and/or Investment Consultant would consider the Putnam Growth Fund as a substi-

tute for the TRP Growth Stock Fund in the event the TRP Growth Stock Fund needed to be replaced.

132. These facts make the Putnam Growth Fund a meaningful comparator to the TRP Growth Stock Fund.

**5. Vanguard Russell 1000 Growth Index Fund**

133. The Vanguard Russell 1000 Growth Index Fund ("Vanguard Growth Fund") is a passively managed index fund that seeks to track the performance of the Russell 1000 Growth Index. The Vanguard Growth Fund tracks the Russell 1000 Growth Index by investing its assets in the large-cap growth stocks that make up the Russell 1000 Growth Index.

134. The Vanguard Growth Fund has similar aims, risks, and potential rewards as the TRP Growth Stock Fund because it tracks TRP Growth Stock Fund's index benchmark.

135. The Vanguard Growth Fund's potential reward is that it will generate investment returns in line with the Russell 1000 index.

136. Like the TRP Growth Stock Fund, the principal risks of the Vanguard Growth Fund are related to (1) market risk, (2) issuer risk, and (3) the risks of investing in growth-oriented stocks.

137. The aims, risks, and potential rewards of the Vanguard Growth Fund are meaningfully comparable to those of the TRP Growth Stock Fund given the similarities in the two funds' aims, investment strategies, and the types and sizes of the stocks the two funds own.

138. As described above, under MPT and CAPM incorporated into the standard of care and circumstances prevailing prior to and throughout the Class Period, the Vanguard Russell 1000 Growth Index Fund represents an investable benchmark that is required to be compared with actively managed large cap growth investment options to evaluate whether it is rational to select or retain a particular actively managed large cap growth investment option.

139. These facts make the Vanguard Growth Fund a meaningful comparator to the TRP Growth Stock Fund.

### 6. Russell 1000 Growth Index

140. As noted above, TRP discloses to the investing public that the Russell 1000 Growth Index is an investment performance benchmark for the TRP Growth Stock Fund and that the Russell 1000 Growth Index is an index that closely aligns with the fund's investment strategy.

141. That means that TRP and the investment manager of the TRP Growth Stock Fund have both necessarily concluded that the TRP Growth Stock Fund and the Russell 1000 Growth Index share similar investment characteristics and, in fact, the prospectus and/or Fact Sheets explicitly compare the performance of the TRP Growth Stock Fund to that of the Russell 1000 Growth Index and thus as a matter of fact is a meaningful benchmark to TRP Growth Stock Fund.

142. The Russell 1000 Growth Index measures the performance of the large-cap growth segment of the U.S. stock market. It includes companies that are similar to the companies included in the TRP Growth Stock Fund.

143. Investors can own the Russell 1000 Growth Index by investing in investment options that own all or substantially all the stocks represented in the Russell 1000 Growth Index such as, e.g., the Vanguard Russell 1000 Growth Index Fund discussed above.

144. By virtue of the similarities in their investment strategies, respective market capitalizations, and risk profiles, the Russell 1000 Growth Index and the TRP Growth Stock Fund share similar aims, rewards, and levels or risks.

145. As described above, under MPT and CAPM incorporated into the standard of care and circumstances prevailing prior to and throughout the Class Period, the Vanguard Russell 1000 Growth Index Fund represents an investable benchmark that is required to be compared with ac-

tively managed large cap growth investment options to evaluate whether it is rational to select or retain a particular actively managed large cap growth investment option.

146. These facts make the Russell 1000 Growth Index a meaningful comparator in the context of evaluating the prudence of TRP Growth Stock Fund under the circumstances prevailing prior to and throughout the Class Period.

147. These facts also make the Russell 1000 index the most appropriate index to use in the context of the calculation and evaluation of the investment performance metrics to determine whether any particular investment option, such as the TRP Growth Stock Fund, is prudent under the circumstances prevailing prior to and throughout the Class Period.

**The TRP Growth Stock Fund Underperformed the Peer Comparators**

148. Poor investment performance can seriously diminish a participant's retirement savings. An investment option that underperforms by a half a percent annually has a material impact on a participant's retirement savings, particularly over the course of a multi-decade working career.

149. Under the circumstances prevailing prior to and throughout the Class Period fiduciaries following a prudent process selecting and monitoring large growth investment options made available to defined contribution plan participants would have evaluated the following commonly accepted MPT investment metrics which clearly demonstrated the TRP Growth Stock Fund should have been removed and replaced prior to the Class Period.

150. The TRP Growth Stock Fund's severe and consistent underperformance, illustrated in the tables below, raises a plausible inference that the TRP Growth Stock Fund could not have been determined to be prudent by any reasonably attentive fiduciaries during the Class Period.

151. Moreover, the TRP Growth Stock Fund's severe underperformance illustrated in the tables below raises a plausible inference that the TRP Growth Stock Fund could not have been

expected to provide reasonable investment returns given the risk and therefore was not a prudent investment prior to and throughout the Class Period.

152. The following table illustrates the severe and consistent underperformance of the TRP Growth Stock Fund compared to meaningful comparable benchmarks and alternative options identified above based on widely used and commonly accepted MPT investment performance metrics.

153. Specifically, the table below provides a summary of 3- and 5-year investment returns and MPT investment manager performance metrics compared to the meaningful comparable investable alternatives/substitutes identified above throughout 2018 and 2019 and into the first quarter of 2020. Specifically, at year-end 2018 and 2019, the TRP Growth Stock Fund had underperformed 84% of a set of significant MPT investment manager metrics over 3- and 5-year periods.

**Performance Metrics Comparison Summary January 2018 - December 2019**

| Metric Analyzed | Total # of Metrics Analyzed Against Comparators | # of Metrics Underperformed | Percentage of Metrics Underperformed |
|---|---|---|---|
| 3 - Year Return | 10 | 10 | 100% |
| 5 - Year Return | 10 | 10 | 100% |
| Sharpe Ratio - 3 - Year | 10 | 9 | 90% |
| Sharpe Ratio - 5 - Year | 10 | 9 | 90% |
| Information Ratio 3 - Year | 8 | 8 | 100% |
| Information Ratio 5 - Year | 8 | 8 | 100% |
| Alpha 3 - Year | 8 | 7 | 88% |
| Alpha 5 - Year | 8 | 7 | 88% |
| Sortino Ratio - 3 - Year | 10 | 8 | 80% |
| Sortino Ratio - 5 - Year | 10 | 7 | 70% |
| Batting Average 3 - Year | 8 | 5 | 63% |
| Batting Average 5 - Year | 8 | 3 | 38% |
| **Total** | **108** | **91** | **84%** |

154. The table below shows the steadily worsening underperformance of the MPT investment metrics of the TRP Growth Stock Fund compared to the meaningful comparable investable alternatives/substitutes/benchmarks identified above throughout the Class Period.

**Performance Metrics Comparison Summary January 2020 - December 2025**

| Metric Analyzed | Total # of Metrics Analyzed Against Comparators | # of Metrics Underperformed | Percentage of Metrics Underperformed |
|---|---|---|---|
| 3 - Year Return | 30 | 29 | 97% |
| 5 - Year Return | 30 | 30 | 100% |
| Sharpe Ratio - 3 - Year | 30 | 29 | 97% |
| Sharpe Ratio - 5 - Year | 30 | 30 | 100% |
| Information Ratio 3 - Year | 24 | 23 | 96% |
| Information Ratio 5 - Year | 24 | 24 | 100% |
| Alpha 3 - Year | 24 | 23 | 96% |
| Alpha 5 - Year | 24 | 24 | 100% |
| Sortino Ratio - 3 - Year | 30 | 28 | 93% |
| Sortino Ratio - 5 - Year | 30 | 30 | 100% |
| Batting Average 3 - Year | 24 | 21 | 88% |
| Batting Average 5 - Year | 24 | 24 | 100% |
| **Total** | **324** | **315** | **97%** |

155. The table below shows the severe underperformance in terms of the returns of the TRP Growth Stock Fund throughout Class Period compared to prudent alternatives and meaningful comparable benchmarks which approximately represents the losses suffered by plan participants as a direct result of the Plan fiduciaries' imprudent retention of the TRP Growth Stock Fund throughout the Class Period.

**Approximate Performance Losses and Metrics January 1, 2020 to December 31, 2025**

| Investment Name | Total # of Metrics Analyzed | # of Metrics Underperformed | Percentage of Metrics Underperformed | Performance Losses ($) vs. Comparators |
|---|---|---|---|---|
| Alger Focus Equity Z | 72 | 71 | 99% | -$152,938,718 |
| Fidelity Blue Chip Growth K | 72 | 72 | 100% | -$121,855,649 |
| JPMorgan Growth Advantage R6 | 72 | 66 | 92% | -$79,019,639 |
| Putnam Large Cap Growth R6 | 72 | 70 | 97% | -$57,703,551 |
| Vanguard Russell 1000 Growth Index I | 36 | 36 | 100% | -$76,833,484 |
| **T. Rowe Price Growth Stock Aggregate Summary** | **324** | **315** | **97%** | |

156. In summary, Defendants retained the TRP Growth Stock Fund prior to and throughout the Class Period despite readily available information (available both prior to and throughout the Class Period) which indicated dramatically inferior investment returns as well as dramatically inferior performance on MPT investment manager and risk adjusted metrics.

157. In other words, examining the information available to the Plan Fiduciaries in 2020, a plan fiduciary following the minimum standard of care for prudence, when evaluating whether to continue to retain the TRP Growth Stock Fund would have determined that its investment performance was inferior and its risk-adjusted performance was severely inferior under commonly accepted MPT investment metrics and thus removed the TRP Growth Stock Fund by early 2020, at the latest.

158. As a direct result of this conduct, the Plan participants have suffered investment losses of, at a minimum, tens of millions of dollars.

159. A prudent fiduciary would have in place a process of investigating and monitoring all plan funds, relative to their comparators and benchmarks, over a 3-year and 5-year period. A prudent fiduciary would put in place, and regularly carry out, a process in which consistently underperforming funds were removed from the list of investment options and replaced with prudent alternative/substitutes.

160. Any prudent fiduciary exercising reasonable and careful stewardship over the Plan, and its menu of investment options, would have noticed that the TRP Growth Stock Fund's consistent underperformance was causing catastrophic damages to the plan participants.

161. The Defendants either did not notice this ongoing underperformance or noticed but did not care. Either way, this continuing inaction is the result of an unreasonable and imprudent process and constitutes a breach of fiduciary duty which caused real and ongoing harm to Plaintiff and other plan participants.

162. In summary, Defendants' failure to have in place adequate processes to promptly remove and replace the TRP Growth Stock Fund from the Plan's investment menu caused the plan participants tens of millions of dollars in lost earnings over the Class Period.

## TRP MID-CAP GROWTH FUND

### A. Mid-Cap Growth Funds

163. Fiduciary duties and basic investment concepts apply to Mid-Cap Growth funds in the same manner as described above with respect to Large-Cap funds.

164. Mid-cap stocks are typically considered in the middle 20% of the capitalization of the U.S. equity market. Mid-growth stocks are typically projected to grow faster than other mid-cap stocks.[12]

165. Mid-growth funds create portfolios primarily composed of mid-cap growth stocks.

166. The typical aim of mid-cap growth funds is to provide investors with long-term growth of capital through investments in primarily mid-cap stocks.

167. The principal categories of risk for growth stock funds include market risk, issuer risk, and the risks of investing in growth-oriented stocks.

168. Market risk is the chance that stock prices overall will decline. Stock markets tend to move in cycles, with periods of rising prices and periods of falling prices, so each fund is subject to the risk that the market as a whole will fall.

169. Issuer risk is the chance that prices of, and the income generated by, individual securities of companies held by the fund may decline in response to various factors directly related to the issuers of such securities, including reduced demand for an issuer's goods or services, poor

[12] *See*, *e.g.,* Morningstar's Investing Terms and Definitions , https://www.morningstar.com/investing-terms/mid-growth (last visited June 25, 2026).

management performance, major litigation, investigations, or other controversies related to the issuer.

170. Investing in growth-oriented stocks also carries risk. In general, such stocks (e.g., Tesla) may experience larger price swings and greater potential for loss than other types of stocks, such as those that are considered value-oriented or those that historically have paid continuous dividends (e.g., 3M Company).

**T. ROWE PRICE MID-CAP GROWTH FUND**

171. The self-defined primary investment objective of TRP Mid-Cap Growth Fund is to invest in a "diversified portfolio of common stocks of mid-cap companies whose earnings T. Rowe Price expects to grow at a faster rate than the average company. The fund's growth-oriented approach to stock selection reflects the belief that when a company's earnings grow faster than both inflation and the overall economy, it will result in a higher stock price."[13]

172. The TRP Mid-Cap Growth Fund is an actively managed fund. In other words, it relies on the professional judgment of a portfolio management team to make decisions about the specific investments within the fund.

173. According to TRP, the TRP Mid-Cap Growth Fund typically invests "at least 80% of its net assets (plus any borrowings for investment purposes) in a diversified portfolio of common stocks of mid-cap companies whose earnings T. Rowe Price expects to grow at a faster rate than the average company."[14]

---

[13] *See, e.g.,* https://www.troweprice.com/financial-intermediary/us/en/investments/mutual-funds/us-products/mid-cap-growth-fund/r-class.html (last visited June 25, 2026).

[14] *Id.*

174. Morningstar categorizes the TRP Mid-Cap Growth Stock Fund within the "Mid Growth" Category, and considers the TRP Mid-Cap Growth Stock Fund's Investment Style to be "Mid Growth."[15]

175. In its most recent prospectus covering performance as of December 31, 2025, TRP compared the performance of the TRP Mid-Cap Growth Fund to the performance of the Russell Midcap Growth Index.

176. Accordingly, a potential reward of investing in the TRP Mid-Cap Growth Fund is that it will generate positive investment returns that outperform the Russell Midcap Growth Index.

### TRP MID-CAP GROWTH FUND SYSTEMATICALLY AND SUBSTANTIALLY UNDERPERFORMED ITS OWN BENCHMARK DURING THE CLASS PERIOD

177. Just as with large-cap funds, as discussed above, careful and prudent fiduciaries should use MPT and CAPM to select a diversified menu of investment options that can be used to create a risk/reward profile that can meet the needs of any hypothetical plan participant. Any riskier investment is rational if, but only if, that risk carries with it a potential for a higher return.

178. Similar MPT and CAPM analyses, as discussed above, may be applied to the TRP Mid-Cap Growth Fund with respect to its benchmark, the Russell Midcap Growth Index.

179. The Russell Midcap Growth Index is the most appropriate index to use in calculating and evaluating the investment performance metrics to determine whether any particular investment option within the mid-cap growth space, such as the TRP Mid-Cap Growth Fund, is prudent under the circumstances prevailing prior to and throughout the Class Period.

180. As this simplified chart below shows, the TRP Mid-Cap Growth Fund has *substantially* underperformed the Russell Midcap Growth Fund in 2023, 2024, and 2025. Over the relevant

15 *See* https://www.morningstar.com/funds/xnas/rrmgx/quote (last visited June 25, 2026).

time period, the cumulative return for the benchmark Russell fund is *four times* as high as the cumulative return for the TRP Mid-Cap Growth Fund.

**Annual Performance**

| Fund | | 2022 | 2023 | 2024 | 2025 | Cumulative Return | Annualized Return |
|---|---|---|---|---|---|---|---|
| RPMGX | T. Rowe Price Mid-Cap Growth | -22.52% | 20.11% | 9.40% | 3.59% | **5.46%** | **1.34%** |
| Russell Mi | Russell Mid Cap Growth TR USD | -26.72% | 25.87% | 22.10% | 8.66% | **22.37%** | **5.18%** |

181. The TRP Mid-Cap Growth Fund had proven that it could not beat (or even match) its benchmark—violating the basic investment principles that additional active management risk must be accompanied by an expectation of additional returns. Under the standards of a prudent fiduciary, it should have been removed from the Plan.

182. As illustrated in the chart below, starting in Q4 of 2019, the TRP Mid-Cap Growth Fund underperformed its benchmark consistently and regularly. Based on 5-year trailing returns, the TRP Mid-Cap Growth Fund did not beat its benchmark *even once* from Q1 2020 onward. This underperformance only worsened over time, particularly in the 2025 time period. A prudent fiduciary reviewing this performance against a benchmark would not have sat idly by as the fund continued to fail to justify its additional risk against its index benchmark.

| T. Rowe Price Mid-Cap Growth | | | | |
|---|---|---|---|---|
| | Return vs Benchmark | | Alpha | |
| | 3-Year | 5-Year | 3-Year | 5-Year |
| Q4 2019 | (0.18%) | 1.15% | 1.75% | 1.98% |
| Q1 2020 | (2.00%) | 0.00% | (1.64%) | 0.23% |
| Q2 2020 | (3.48%) | (0.96%) | (2.51%) | (0.39%) |
| Q3 2020 | (3.57%) | (1.70%) | (2.37%) | (0.83%) |
| Q4 2020 | (3.54%) | (2.40%) | (2.00%) | (1.22%) |
| Q1 2021 | (2.84%) | (1.34%) | (1.32%) | (0.10%) |
| Q2 2021 | (3.67%) | (2.43%) | (1.56%) | (0.65%) |
| Q3 2021 | (3.17%) | (2.11%) | (1.46%) | (0.41%) |
| Q4 2021 | (4.06%) | (1.72%) | (1.36%) | 0.21% |
| Q1 2022 | (2.01%) | (1.58%) | (0.67%) | (0.08%) |
| Q2 2022 | (0.16%) | (0.50%) | 0.13% | 0.30% |
| Q3 2022 | (1.35%) | (1.04%) | (1.05%) | (0.38%) |
| Q4 2022 | (0.41%) | (0.29%) | (0.23%) | 0.30% |
| Q1 2023 | 0.41% | (1.07%) | 2.10% | (0.29%) |
| Q2 2023 | 0.74% | (0.79%) | 1.46% | 0.00% |
| Q3 2023 | 1.24% | (0.64%) | 1.09% | (0.21%) |
| Q4 2023 | 0.99% | (1.99%) | 0.59% | (0.77%) |
| Q1 2024 | (0.55%) | (1.53%) | (0.50%) | (0.56%) |
| Q2 2024 | 0.37% | (2.13%) | (0.32%) | (1.32%) |
| Q3 2024 | (0.12%) | (2.27%) | (0.53%) | (1.28%) |
| Q4 2024 | (3.44%) | (3.70%) | (3.64%) | (2.45%) |
| Q1 2025 | (4.03%) | (2.91%) | (3.84%) | (0.98%) |
| Q2 2025 | (10.15%) | (4.25%) | (6.35%) | (2.31%) |
| Q3 2025 | (9.34%) | (4.19%) | (5.09%) | (2.59%) |
| Q4 2025 | (7.82%) | (2.70%) | (4.29%) | (2.11%) |

183. Just like the TRP Growth Stock Fund, the TRP Mid-Cap Growth fund ultimately offered a *lower* return for a *higher* degree of risk—the precise opposite of what any prudent and careful fiduciary would seek.

184. Based on the information available to the Plan Fiduciaries with respect to TRP Mid-Cap Growth Fund performance against its index benchmark, a plan fiduciary following the minimum standard of care for prudence, when evaluating whether to continue to retain the TRP Mid-Cap Growth Fund would have determined that it violated bedrock investment principles and removed it from the Plan.

185. Any prudent fiduciary exercising prudent monitoring of its menu of investment options, would have noticed that the TRP Mid-Cap Growth Fund's consistent underperformance was causing catastrophic damages to the plan participants.

186. Fiduciaries following a prudent process in monitoring this investment would have recognized this underperformance, not have ignored the TRP Mid-Cap Growth Fund's shortcom-

ings against its applicable index benchmark, and would have promptly removed this Fund from the Plan.

187. Fiduciaries applying a prudent process could not sit idly by as an investment continuously failed to beat its applicable index benchmark. The TRP Mid-Cap Growth Fund was and is simply not an appropriate option for the Plan.

188. Defendants' failure to notice or act upon the TRP Mid-Cap Growth Fund's underperformance of its own index benchmark alone is cause enough to infer imprudent process.

### PEER COMPARISON, SELECTION, MONITORING, AND REPLACEMENT PROCESS USED BY PRUDENT FIDUCIARIES

189. Defendants similarly failed to notice, or act on, the TRP Mid-Cap Growth Fund's consistent underperformance relative to its peers.

190. The standard of care for plan fiduciaries selecting and monitoring investment options under the circumstances prevailing prior to and throughout the Class Period requires an evaluation of several commonly accepted MPT metrics which serve as indicators/predictors as to whether it is reasonable to assume that any particular investment is likely to achieve its goals prospectively and is a reasonable option compared to alternatives that appear to be more likely to achieve their goals.

191. The TRP Mid-Cap Growth Fund is not the only mid-cap growth fund on the market with a substantially similar mix of aims, risks, and potential rewards as described above. As shown below, numerous substantially similar funds / substitutes have existed prior to and throughout the Class Period. The TRP Mid-Cap Growth Fund dramatically and consistently underperformed several meaningful substitutes across a wide range of commonly and prudently utilized metrics.

192. A prudent fiduciary would include all the investment options described below as part of the peer consideration set for benchmarking the TRP Mid-Cap Growth Fund, and as potential replacements for the TRP Mid-Cap Growth Fund in the event it needed to be replaced.

193. A prudent fiduciary would evaluate the performance of TRP Mid-Cap Growth Fund in comparison to the alternative comparable substitute investment options and benchmarks described below.

194. The following investment strategies/investment funds are and have been meaningful benchmarks as well as potential replacements for the TRP Mid-Cap Growth Fund throughout the Class Period:[16]

- Federated Hermes MDT Mid Cap Growth R6
- Fidelity Growth Strategies K
- American Beacon Stephens Mid-Cap Gr R6

195. Each of these comparable benchmarks and investable substitutes set forth above shares the same aims, risks, potential rewards, goals, and objectives and are categorized identically by Morningstar under the following portfolio criteria: 1) Morningstar Category Broad Group ("Equity"); 2) Morningstar Category Group ("Equity"); 3) Morningstar Category ("US Fund Mid Growth"); 4) Morningstar Global Category ("US Equity Mid Cap Growth"); 5) US Category Group ("U.S. Equity"); 6) Morningstar Equity Style Box (Long) ("Mid Growth").

196. The investment strategies and aims of each of the comparable benchmarks and investable substitutes set forth below are designed to focus on mid-cap growth stocks. As a result,

[16] Any investment performance metric comparisons and other comparative metrics contained in this Complaint utilize the share class and/or trust that is the most appropriate for comparison in terms of fee rates, investment minimums, and track record (meaning the length of time for which the investment option has available data).

they are each required to share very similar asset allocations and, in fact, have had very similar asset allocations, to the TRP Mid-Cap Growth Fund prior to and throughout the Class Period.

197. For example, the TRP Mid-Cap Growth Fund and all comparator peers invest the vast majority of their assets in the Mid-Cap Equity category without diversifying into bonds or fixed income investments. As such their risks, aims, goals, and strategies are aligned and centered on Mid-Cap opportunities, particularly within the Growth sector.

**a. Federated Hermes MDT Mid Cap Growth R6**

198. The Federated Hermes MDT Mid Cap Growth R6 Fund has similar aims, risks, and potential rewards to those of the TRP Mid-Cap Growth Fund.

199. Like the TRP Mid-Cap Growth Fund, the Federated Hermes MDT Mid Cap Growth R6 Fund is an actively managed mid-cap growth fund.

200. The Federated Hermes MDT Mid Cap Growth R6 Fund's aim is to seek long-term growth of capital. Like the TRP Mid-Cap Growth Fund, the Federated Hermes MDT Mid Cap Growth R6 Fund pursues its aim by investing primarily in mid-cap stocks with growth characteristics.

201. Like the TRP Mid-Cap Growth Fund, the principal risks of the Federated Hermes MDT Mid Cap Growth R6 Fund are related to (1) market risk; (2) issuer risk; and (3) the risks of investing in growth-oriented stocks.

202. The aims, risks, and potential rewards of the Federated Hermes MDT Mid Cap Growth R6 Fund are meaningfully comparable to those of the TRP Mid-Cap Growth Fund given the similarities in the two funds' investment strategies and the types and sizes of the stocks the two funds own.

**b. Fidelity Growth Strategies K**

203. The Fidelity Growth Strategies K Fund has similar aims, risks, and potential rewards to those of the TRP Mid-Cap Growth Fund.

204. Like the TRP Mid-Cap Growth Fund, the Fidelity Growth Strategies K Fund is an actively managed mid-cap growth fund.

205. The Fidelity Growth Strategies K Fund's aim is to seek long-term growth of capital. Like the TRP Mid-Cap Growth Fund, the Fidelity Growth Strategies K Fund pursues its aim by investing primarily in mid-cap stocks with growth characteristics.

206. Like the TRP Mid-Cap Growth Fund, the principal risks of the Fidelity Growth Strategies K Fund are related to (1) market risk; (2) issuer risk; and (3) the risks of investing in growth-oriented stocks.

207. The aims, risks, and potential rewards of the Fidelity Growth Strategies K Fund are meaningfully comparable to those of the TRP Mid-Cap Growth Fund given the similarities in the two funds' investment strategies and the types and sizes of the stocks the two funds own.

**c. American Beacon Stephens Mid-Cap Gr R6**

208. The American Beacon Stephens Mid-Cap Gr R6 Fund has similar aims, risks, and potential rewards to those of the TRP Mid-Cap Growth Fund.

209. Like the TRP Mid-Cap Growth Fund, the American Beacon Stephens Mid-Cap Gr R6 Fund is an actively managed mid-cap growth fund.

210. The American Beacon Stephens Mid-Cap Gr R6 Fund's aim is to seek long-term growth of capital. Like the TRP Mid-Cap Growth Fund, the American Beacon Stephens Mid-Cap Gr R6 Fund pursues its aim by investing primarily in mid-cap stocks with growth characteristics.

211. Like the TRP Mid-Cap Growth Fund, the principal risks of the American Beacon Stephens Mid-Cap Gr R6 Fund are related to (1) market risk; (2) issuer risk; and (3) the risks of investing in growth-oriented stocks.

212. The aims, risks, and potential rewards of the American Beacon Stephens Mid-Cap Gr R6 Fund are meaningfully comparable to those of the TRP Mid-Cap Growth Fund given the similarities in the two funds' investment strategies and the types and sizes of the stocks the two funds own.

### THE TRP MID-CAP GROWTH FUND UNDERPERFORMED THE PEER COMPARATORS

213. Poor investment performance can seriously diminish a participant's retirement savings. An investment option that underperforms by a half a percent annually has a material impact on a participant's retirement savings, particularly over the course of a multi-decade work-ing career.

214. Under the circumstances prevailing prior to and throughout the Class Period fiduciaries following a prudent process selecting and monitoring large growth investment options made available to defined contribution plan participants would have evaluated the following commonly accepted MPT investment metrics which clearly demonstrated the TRP Mid-Cap Growth Fund should have been removed and replaced during the Class Period.

215. The TRP Mid-Cap Growth Fund's severe and consistent underperformance, illustrated in the tables below, raises a plausible inference that the TRP Mid-Cap Growth Fund could not have been determined to be prudent by any reasonably attentive fiduciaries during the Class Period.

216. The TRP Mid-Cap Growth Fund's severe underperformance illustrated in the tables below raises a plausible inference that the TRP Mid-Cap Growth Fund could not have been expected to provide reasonable investment returns given the risk and therefore was not a prudent investment throughout the Class Period.

217. The following table illustrates the severe and consistent underperformance of the TRP Mid-Cap Growth Fund compared to meaningful comparable benchmarks and alternative op-

tions identified above based on widely used and commonly accepted MPT investment performance metrics.

218. Specifically, the table below provides a summary of 3- and 5-year investment returns and MPT investment manager performance metrics compared to the meaningful comparable investable alternatives/substitutes identified above from 2022-2025. During that time period, the TRP Mid-Cap Growth Fund underperformed 91% of a set of significant MPT investment manager metrics over 3- and 5-year periods.

**Approximate Performance Losses and Metrics January 1, 2022 to December 31, 2025**

| Investment Name | Total # of Metrics Analyzed | # of Metrics Underperformed | Percentage of Metrics Underperformed | Performance Losses ($) vs. Comparators |
|---|---|---|---|---|
| Federated Hermes MDT Mid Cap Growth R6 | 48 | 48 | 100% | -$27,797,628 |
| Fidelity Growth Strategies K | 48 | 48 | 100% | -$16,827,946 |
| American Beacon Stephens Mid-Cap Gr R6 | 48 | 38 | 79% | -$7,905,326 |
| **T. Rowe Price Mid-Cap Growth Aggregate Summary** | **184** | **168** | **91%** | |

219. The tables below show the continuing severe underperformance of the MPT investment metrics of the TRP Mid-Cap Growth Fund compared to the meaningful comparable investable alternatives/substitutes/benchmarks identified above both before, and throughout, the Class Period.

**Performance Metrics Comparison Summary January 2020 - December 2021**

| Metric Analyzed | Total # of Metrics Analyzed Against Comparators | # of Metrics Underperformed | Percentage of Metrics Underperformed |
|---|---|---|---|
| 3 - Year Return | 6 | 6 | 100% |
| 5 - Year Return | 6 | 5 | 83% |
| Sharpe Ratio - 3 - Year | 6 | 6 | 100% |
| Sharpe Ratio - 5 - Year | 6 | 6 | 100% |
| Information Ratio 3 - Year | 6 | 6 | 100% |
| Information Ratio 5 - Year | 6 | 5 | 83% |
| Alpha 3 - Year | 6 | 6 | 100% |
| Alpha 5 - Year | 6 | 6 | 100% |
| Sortino Ratio - 3 - Year | 6 | 6 | 100% |
| Sortino Ratio - 5 - Year | 6 | 6 | 100% |
| Batting Average 3 - Year | 6 | 5 | 83% |
| Batting Average 5 - Year | 6 | 6 | 100% |
| **Total** | **72** | **69** | **96%** |

**Performance Metrics Comparison Summary January 2022 - December 2025**

| Metric Analyzed | Total # of Metrics Analyzed Against Comparators | # of Metrics Underperformed | Percentage of Metrics Underperformed |
|---|---|---|---|
| 3 - Year Return | 12 | 11 | 92% |
| 5 - Year Return | 12 | 12 | 100% |
| Sharpe Ratio - 3 - Year | 12 | 11 | 92% |
| Sharpe Ratio - 5 - Year | 12 | 12 | 100% |
| Information Ratio 3 - Year | 12 | 10 | 83% |
| Information Ratio 5 - Year | 12 | 12 | 100% |
| Alpha 3 - Year | 12 | 11 | 92% |
| Alpha 5 - Year | 12 | 12 | 100% |
| Sortino Ratio - 3 - Year | 12 | 11 | 92% |
| Sortino Ratio - 5 - Year | 12 | 12 | 100% |
| Batting Average 3 - Year | 12 | 9 | 75% |
| Batting Average 5 - Year | 12 | 11 | 92% |
| **Total** | **144** | **134** | **93%** |

220. The table below shows the severe underperformance in terms of the returns of the TRP Mid-Cap Growth Fund throughout Class Period compared to prudent alternatives and meaningful comparable benchmarks which approximately represents the losses suffered by plan participants as a direct result of the Plan fiduciaries' imprudent retention of the TRP Mid-Cap Growth Fund throughout the Class Period.

**Approximate Performance Losses and Metrics January 1, 2022 to December 31, 2025**

| Investment Name | Total # of Metrics Analyzed | # of Metrics Underperformed | Percentage of Metrics Underperformed | Performance Losses ($) vs. Comparators |
|---|---|---|---|---|
| Federated Hermes MDT Mid Cap Growth R6 | 48 | 48 | 100% | -$27,797,628 |
| Fidelity Growth Strategies K | 48 | 48 | 100% | -$16,827,946 |
| American Beacon Stephens Mid-Cap Gr R6 | 48 | 38 | 79% | -$7,905,326 |
| **T. Rowe Price Mid-Cap Growth Aggregate Summary** | **184** | **168** | **91%** | |

221. In summary, Defendants retained the TRP Mid-Cap Growth Fund prior to and throughout the Class Period despite readily available information which indicated dramatically inferior investment returns as well as dramatically inferior performance on MPT investment manager and risk adjusted metrics.

222. In other words, examining the information available to the Plan Fiduciaries, a plan fiduciary following the minimum standard of care for prudence, when evaluating whether to continue to retain the TRP Mid-Cap Growth Fund would have determined that its investment performance was inferior and its risk-adjusted performance was severely inferior under commonly accepted MPT investment metrics and thus removed the TRP Mid-Cap Growth Fund from the Plan.

223. Any prudent fiduciary exercising reasonable and careful stewardship over the Plan, and its menu of investment options, would have noticed that the TRP Mid-Cap Growth Fund's consistent underperformance was causing catastrophic damages to the plan participants. As a direct result of this conduct, the Plan participants have suffered investment losses as set forth in the table above.

224. The Defendants either did not notice this ongoing underperformance or noticed but did not care. Either way, this continuing inaction is the result of an unreasonable and imprudent process and constitutes a breach of fiduciary duty which caused real and ongoing harm to Plaintiff and other plan participants.

## CLASS ACTION ALLEGATIONS

225. 29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a).

226. In acting in his representative capacity for the Plan, Plaintiff seeks to certify this action as a class action on behalf of all participants and beneficiaries of the Plan. Plaintiff seeks to certify, and to be appointed as representative of, the following 401(k) Class:

> All participants and beneficiaries of the Pitney Bowes Inc. 401(k) Plan (excluding the Defendants or any participant/beneficiary who is a fiduciary to the Plan) beginning June 30, 2020, and running through the date of judgment.

227. The 401(k) Class includes thousands of members and is so large that joinder of all its members is impracticable, pursuant to Federal Rule of Civil Procedure 23(a)(1).

228. There are questions of law and fact common to this 401(k) Class pursuant to Federal Rule of Civil Procedure 23(a)(2), because Defendants owed fiduciary duties to the Plan and took the actions and omissions alleged as to the Plan and not as to any individual participant. Common questions of law and fact include but are not limited to the following:

a. Whether Defendants are fiduciaries liable for the remedies provided by 29 U.S.C. § 1109(a);

b. Whether Defendants breached their fiduciary duties to the Plan by failing to put in place, and carry out, a reasonable and prudent process for reviewing investment options within the Plan;

c. What are the losses to the Plan resulting from each breach of fiduciary duty; and

d. What Plan-wide equitable and other relief the Court should impose in light of Defendants' breach of fiduciary duty.

229. Plaintiff's claims are typical of the claims of the Class pursuant to Federal Rule of Civil Procedure 23(a)(3), because Plaintiff was a participant during the time period at issue and all similarly situated participants in the Plan were harmed by Defendants' misconduct.

230. Plaintiff will adequately represent the Class pursuant to Federal Rule of Civil Procedure 23(a)(4), because Plaintiff was a participant in the Plan during the Class Period, has no interest that conflicts with the Class, is committed to the vigorous representation of the Class, and has engaged experienced and competent lawyers to represent the Class.

231. Certification is appropriate under Federal Rule of Civil Procedure 23(b)(1), because prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of (1) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant concerning its discharge of fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a), and (2) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries who are not parties to the adjudication, or would substantially impair those participants' and beneficiaries' ability to protect their interests.

232. Certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

233. Plaintiff's counsel has substantial and varied experience in complex ERISA and class action litigation and will adequately represent the Class.

234. The claims brought by the Plaintiff arise from fiduciary breaches as to the Plan in its entirety and do not involve mismanagement of individual accounts.

235. The claims asserted on behalf of the Plan in this case fall outside the scope of any exhaustion language in the individual participants' Plan.

236. Exhaustion is intended to serve as an administrative procedure for participants and beneficiaries whose claims have been denied and not where a participant or beneficiary brings suit on behalf of a Plan for breaches of fiduciary duty.

237. Under ERISA, an individual "participant" or "beneficiary" is distinct from an ERISA Plan. A participant's obligation—such as a requirement to exhaust administrative remedies—does not, by itself, bind the Plan.

238. Moreover, any administrative appeal would be futile because the entity hearing the appeal (the Plan Administrator) is the same Plan Administrator that made the decisions that are at issue in this lawsuit. Policy supporting exhaustion of administrative remedies in certain circumstances—that the Court should review and where appropriate defer to a Plan administrator's decision—does not exist here because courts will not defer to Plan administrator's legal analysis and interpretation.

## FIRST CLAIM FOR RELIEF
**Breach of Duty of Prudence**
**Against the 401(k) Committee**

239. Plaintiff restates paragraphs 1-238 as if fully set forth herein.

240. At all relevant times, the 401(k) Committee and all individual 401(k) Committee members acted as fiduciaries within the meaning of 29 U.S.C. § 1002(21)(A). Each of these De-

fendants (i) exercised authority and control with respect to the management of the Plan and its assets; (ii) rendered investment advice for a fee or other compensation, direct or indirect, with respect to Plan assets, or had the authority or responsibility to do so; and (iii) had discretionary authority or discretionary responsibility in the administration of the Plan.

241. Pursuant to 29 U.S.C. § 1104(a)(1), (B), the 401(k) Committee and its individual members were required to discharge their duties to the Plan "solely in the interest of the participants and beneficiaries" and to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

242. The 401(k) Committee and its individual members are and were responsible for investigating, evaluating, and monitoring the Plan's investment options on an ongoing basis, eliminating imprudent investments, and taking all necessary steps to ensure that plan assets were invested prudently.

243. The 401(k) Committee and its individual members breached their fiduciary duties through an imprudent process for investigating, evaluating, and monitoring the Plan's investment options.

244. A reasonably prudent fiduciary, following a reasonably prudent process, would have removed and not retained the T. Rowe Price Growth Stock Fund from the Plan's set of investment options.

245. A reasonably prudent fiduciary, following a reasonably prudent process, would have removed and not retained the T. Rowe Price Mid-Cap Growth Fund from the Plan's set of investment options.

246. By failing to remove the T. Rowe Price Growth Stock Fund and the T. Rowe Price Mid-Cap Growth Fund from the Plan's set of investment options, and replacing them with one of

the several available comparator funds, the 401(k) Committee and its individual members therefore failed to discharge their duties with the care, skill, diligence and prudence required by ERISA.

247. These breaches have caused substantial damage to the Plan, for which the 401(k) Committee and its individual members are jointly and severally liable.

248. The 401(k) Committee and its individual members knowingly participated in the breach of the other, knowing that such acts were a breach, enabled other fiduciaries to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

## SECOND CLAIM FOR RELIEF
### Failure to Adequately Monitor Other Fiduciaries
### Against Pitney Bowes

249. Plaintiff restates paragraphs 1-238 as if fully set forth herein.

250. Defendant Pitney Bowes had the authority to appoint and remove members or individuals of the 401(k) Committee and knew or should have known that these fiduciaries had critical responsibilities for the Plan.

251. Pitney Bowes had a duty to monitor those individuals to ensure that they were adequately performing their fiduciary obligations, and to take prompt and effective action to protect the Plan in the event that the fiduciaries were not fulfilling their duties.

252. Pitney Bowes further had a duty to ensure that the Plan fiduciaries possessed the needed qualifications and experience to carry out their duties (or use qualified advisors and service providers to fulfill their duties); had adequate financial resources and information; maintained ad-

equate records of the information on which they based their decisions and analysis; and reported regularly to Pitney Bowes as Plan sponsor.

253. The objectively imprudent manner in which the 401(k) Committee failed to timely act to remove the T. Rowe Price Growth Stock Fund and T. Rowe Price Mid-Cap Growth Fund inferentially establishes that Pitney Bowes breached its duty to monitor by failing to monitor and evaluate the performance of 401(k) Plan fiduciaries or have a system in place for doing so; failing to monitor the process by which the Pitney Bowes 401(k) Committee evaluated, selected, and monitored plan investment options; and failing to remove individuals whose performance was inadequate in their fiduciary duties on the Pitney Bowes 401(k) Committee.

254. As a consequence of these breaches of the duty to monitor, Plaintiff and other Plan participants suffered tens of millions of dollars of objectively unreasonable and unnecessary monetary losses.

255. Pursuant to 29 U.S.C. §§1109(a) and 1132(a)(2), Pitney Bowes is liable to restore to the 401(k) Plan all losses caused by its failure to adequately monitor individuals responsible for the failure to remove the TRP Growth Stock Fund on the 401(k) Committee, as well as equitable relief and other appropriate relief as set forth in the Prayer for Relief.

WHEREFORE, Plaintiff prays that judgment be entered against Defendants on all claims and requests that the Court award the following relief:

A. A determination that this action may proceed as a class action under Rule 23(b)(1), or in the alternative Rule 23(b)(2), of the Federal Rules of Civil Procedure;

B. Designation of Plaintiff as Class Representative and designation of Plaintiff's counsel as Class Counsel;

C. A Declaration the Defendants have breached their fiduciary duties under ERISA;

D. An Order compelling the Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of fiduciary duty, and restoring to the Plan all

profits which the Participants would have made if the Defendants had fulfilled their fiduciary obligations;

E. An Order requiring Pitney Bowes to disgorge all profits received from, or in respect of, the Plan, and/or equitable relief pursuant to 29 U.S.C. § 1132(a)(3) in the form of an accounting for profits, imposition of constructive trust, or surcharge against Pitney Bowes as necessary to effectuate relief, and to prevent Pitney Bowes's unjust enrichment;

F. An Order enjoining Defendants from any further violation of their ERISA fiduciary responsibilities, obligations, and duties;

G. Other equitable relief to redress Defendants' illegal practices and to enforce the provisions of ERISA as may be appropriate, including appointment of an independent fiduciary/consultant or fiduciaries to run the Plan and removal of plan fiduciaries deemed to have breached their fiduciary duties;

H. An award of pre-judgment and post-judgment interest;

I. An award of attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

J. Such other and further relief as the Court deems equitable and just.

Respectfully submitted,

Date: June 30, 2026

James J. Healy (ct28447)
**COWDERY, MURPHY & HEALY, LLC**
James J. Healy
280 Trumbull Street, 22nd Floor
Hartford, CT 06103
(860) 278-5555
(860) 249-0012 Fax
jhealy@cmandh.com

**MILBERG, PLLC**
Ryan M. Tucker*
Alexandr Rudenco*
800 S. Gay St., Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080
rtucker@milberg.com
arudenco@milberg.com

**STIEGLER LAW FIRM LLC**
Charles J. Stiegler*
318 Harrison Ave., #104
New Orleans, La. 70124
Telephone: (504) 267-0777
charles@stieglerlawfirm.com

**Pro Hac Vice* Application Forthcoming

*Attorneys for Plaintiff and Proposed Class*